Peter W. Bufton and Sarah Bufton v. Commissioner.
Bufton v. Commissioner
Docket No. 2223-70 SC.
United States Tax Court
T.C. Memo 1970-320; 1970 Tax Ct. Memo LEXIS 42; 29 T.C.M. (CCH) 1468; T.C.M. (RIA) 70320; November 18, 1970, Filed. Peter W. Bufton, pro se, Box 3, Elmo, Mont.Joe K. Gordon, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1967 in the amount of $58. The only issue is whether petitioners are entitled, under section 162(a), [1] to deduct Peter W. Bufton's expenditures for meals and lodging in the area of Trego, Montana; the answer depends upon whether he was "away from home in the pursuit *43 of a trade or business" within the meaning of the section. Findings of Fact Peter W. Bufton (hereinafter referred to as petitioner) and Sarah Bufton, husband and wife, were legal residents of Big Arm, Montana, at the time they filed their petition. They filed a joint Federal income tax return for 1967 with the district director of internal revenue, Helena, Montana. At the time of the trial, petitioner was 47 years of age. He had attended college for three years and, in addition, had studied accounting through a correspondence school. During 1964 and 1965, he worked in Oregon and in northern California as a field engineering technician on highway construction. In 1966, he returned to Montana, where he had previously lived, and worked on the Libby Dam Project. From mid-April to mid-July 1967, petitioner worked on the same project for another employer, Libby Dam Builders. His work experience included about five months as a bookkeeper. On August 22, 1967, petitioner secured seasonal employment as an assistant to a grade foreman with King-Paola, *44 Incorporated, Associates (hereinafter King-Paola) at Trego, Montana. This was a joint venture organized to move 15 miles of the track of the Great Northern Railroad, the work having been necessitated by the construction of the Libby Dam. At the time of petitioner's initial employment by King-Paola, he requested work as a bookkeeper but was informed that position was filled. After about one month on this job, he was offered and accepted a position as a bookkeeper for King-Paola. This was a permanent change in the nature of his job - he was no longer on the grade crew - and was not a seasonal occupation. While he was never expressly informed of the duration of his employment, he knew that his employer's contract extended until January of 1970 and that he would be retained so long as he was able to do the work. He was actually employed through February of 1970. While he was working for King-Paola, petitioner's family resided in three different towns, the closest of which was Big Arm, a community with a population of about 100, located approximately 100 miles from Trego. Petitioner lived in boarding houses in Eureka, which is about 12 miles from Trego, and in Trego. Eureka has a population *45 in excess of 1,000, and Trego's population was about 100 prior to the construction work. The cost of petitioner's board and room while living in Eureka and Trego was approximately $7 per day. In his income tax return for 1967, petitioner claimed a deduction for "Employee business expense" in the total amount of $1,381.40, consisting of three items as follows: Board and room away from home:
170 days at $7.00
$1,190.00
Remote area transportation costs:
30 days of 50 miles per day at 10"
150.00
69 days of 6 miles per day at 10" 41.40
Total
$1,381.40 The notice of deficiency explained the adjustments as follows: (a) It is held that Trego, Montana, constituted your home for tax purposes while you were employed as a bookkeeper for King-Paola, Inc., Associates in that community and that you did not incur travel expenses away from home within the meaning of Section 162 of the Internal Revenue Code. Consequently, the deduction which you claimed for living expenses at that location in 1967 in the amount of $483.00 (69 days at $7.00 per day) are not allowed because they constitute personal living expenses under Section 262 of the Internal Revenue Code *46 . (b) It is determined that you are entitled to deduct away from home living expenses for 84 days at $7.00, while working for Libby Dam Builders. Since you claimed expenses for only 71 days at $7.00, your taxable income has been decreased in the amount of $91.00. 1470 Ultimate Finding of Fact Petitioner's work was not temporary, and therefore he was not away from home within the meaning of section 162(a). Opinion Section 162(a)(2) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"; among such expenses are "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." The only question presented for decision is whether petitioner was "away from home" and thus entitled to deduct his expenses for "meals and lodging" during the period that he served as bookkeeper for King-Paola. The general rule is that a taxpayer's "home" for *47 purposes of section 162(a) is in the vicinity of his principal place of employment. Emil J. Michaels, 53 T.C. 269, 273 (1969); Rendell Owens, 50 T.C. 577, 580 (1968); Lloyd G. Jones, 54 T.C. 734, 740 (1970), on appeal (C.A. 5, Aug. 20, 1970). When a taxpayer chooses not to live in the vicinity of his employment, his place of employment rather than his residence is regarded as his home for tax purposes. Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946). There is, however, a limited exception to this rule where the employee is temporarily away from home on a job of short duration; in that case, his normal place of employment may remain his tax home. Commissioner v. Peurifoy, 254 F. 2d 483, 486-487 (C.A. 4, 1957), affirmed per curiam 358 U.S. 59 (1958); Cockrell v. Commissioner, 321 F. 2d 504, 507 (C.A. 8, 1963), affirming 38 T.C. 470 (1962). The purpose of allowing a taxpayer to deduct his expenses while away from home is to help "mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, *48 must maintain two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968); James v. United States, 308 F. 2d 204 (C.A. 9, 1962). When the employment is only temporary and for a short duration it is not reasonable to expect the taxpayer to move his residence and, therefore, any duplicate living expenses which he incurs are caused by the exigencies of his employment. Where the employment can be expected to last for a substantial period of time, however, it is reasonable to expect the taxpayer to move closer to his work. Any reason for not moving closer is a personal one, and the duplicate expenses are not caused by the exigencies of the business and are not deductible. Respondent did not disallow petitioner's deductions for his living expenses while he was working for Libby Dam Builders or while he was seasonally employed on the grade crew for King-Paola. These jobs were temporary in nature, and it would not be reasonable to expect petitioner to move his family closer to his place of work while he held them. The situation is quite different, however, with respect to petitioner's job as a bookkeeper. *49 He testified that he knew the job would probably last from September of 1967 until January of 1970 - about 2 1/3 years - and it in fact lasted until February of 1970. Petitioner testified that he was not sure that he could satisfactorily do the bookkeeping work, but this fact is not sufficient to make the job temporary for purposes of section 162(a). Cf. Floyd Garlock, 34 T.C. 611 (1960). Petitioner's prior experience as a bookkeeper and his correspondence course in accounting had equipped him for this work. We do not think that any early feelings of insecurity that he might have had about his ability to do the job were materially different from those of any other person undertaking a new job, and they did not make his bookkeeping job a temporary one. Since petitioner reasonably expected his bookkeeping job to last more than two years, his living expenses in Trego cannot be characterized as "traveling expenses * * * while away from home in the pursuit of a trade or business" within the meaning of section 162(a)(2). The doctrine of the Court of Appeals for the Ninth Circuit expressed in Wright v. Hartsell, 305 F. 2d 221 (C.A. 9, 1962), [2] is not applicable *50 here. In that case, the court held that a construction worker, who was unable to live near 1471 his job site, which was located in a remote area, was entitled to a deduction for his transportation expenses to and from a point as near the job site as he could have reasonably lived. But see Smith v. Warren, 388 F. 2d 671 (C.A. 9, 1968); Steinhort v. Commissioner, 335 F. 2d 496, 504 (C.A. 5, 1964); William L. Heuer, Jr. , 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960); Raymond A. Sanders, 52 T.C. 964 (1969), on appeal (C.A. 9, Dec. 19, 1969). The facts do not show that petitioner's case falls within this rule. While petitioner was working in Trego, his family lived in Big Arm, a community with approximately the same population location about 100 miles away. The record contains virtually no evidence to show why petitioner did not move his family to Trego after he was given the position as bookkeeper, i.e., that *51 he could not have found housing for them in the Trego community if he had chosen to do so. Even if housing was not available in Trego, the town of Eureka, considerably larger than either Big Arm or Trego, is only about 12 miles away. There is no evidence that he could not have found housing in Eureka or in one of several other communities within reasonable commuting distance. We are not convinced that he did not continue to maintain the residence in Big Arm for personal reasons. We hold that petitioner's expenses for meals and lodging during the period he was employed in Trego as a bookkeeper are not deductible. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. The appellate venue of the present case is the Court of Appeals for the Ninth Circuit. See Jack E. Golsen, 54 T.C. 742↩ (1970), on appeal (C.A. 10, May 4, 1970).